# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE PEOPLES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHILDREN'S HOSPITAL OF CENTRAL CALIFORNIA, *et al.*,<br><br>Defendants. | 1:19-cv-00272-LJO-SKO<br><br>**ORDER RE DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>ECF No. 45 |

On August 21, 2019, Defendant Valley Children's Hospital, Inc. ("VCH") filed the instant motion to compel arbitration and dismiss or stay proceedings. *See* ECF Nos. 45–46. Plaintiff Yvonne Peoples ("Ms. Peoples") filed her opposition on August 29, 2019. *See* ECF No. 47. VCH filed its reply on September 11, 2019, and September 12, 2019.[1] *See* ECF Nos. 55, 58.

The Court has reviewed the parties' filings and has determined the motion to compel arbitration is suitable for decision based on the papers under Local Rule 230(g).

## I. BACKGROUND

This is Ms. Peoples's second lawsuit against VCH. In 2015, Plaintiff filed her first suit against VCH alleging wrongful termination, discrimination, and retaliation. *See* ECF No. 50 ¶ 9. In August

---

[1] VHC filed the unredacted version of its reply on September 12, 2019. *See* ECF No. 58.

2016, Ms. Peoples reached a settlement with VCH, which included monetary damages and reinstatement to her position. *See id.* ¶¶ 9–10.

After the settlement and Ms. Peoples's reinstatement, Ms. Peoples alleges that she was subject to more unlawful conduct at VCH and that VCH breached the implied covenant of good faith and fair dealing with respect to the Settlement Agreement. *See* ECF No. 50 ¶¶ 10–14. Ms. Peoples filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2018. *See id.* ¶ 3. On November 29, 2018, the EEOC issued a notice of right to sue. *See id.* Ms. Peoples received a right to sue letter under California's Fair Employment and Housing Act ("FEHA") in late October 2018. *See id.*

On February 26, 2019, Ms. Peoples filed the instant action against Defendants Children's Hospital of Central California and Valley Children's Hospital, Inc. ("VCH").[2] *See* ECF No. 1. She raises claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) ("Title VII"); California's Fair Employment and Housing Act ("FEHA"); as well as state law claims for wrongful termination in violation of public policy and California Labor Code § 1102.5. *See* ECF No. 50. Ms. Peoples amended her complaint on September 4, 2019. *See* ECF No. 50. The amended complaint joins Ms. Peoples's husband, Claud S. Peoples ("Mr. Peoples"), Mr. Peoples's loss of consortium claim, and adds a breach of the covenant of good faith and fair dealing claim on behalf of Ms. Peoples. *See* ECF No. 49 at 3; *see generally* ECF No. 50.

VCH filed its first motion to compel arbitration on March 21, 2019, citing an arbitration provision contained within the parties' Settlement Agreement. *See* ECF Nos. 13, 19. The Settlement Agreement provides: "In lieu of filing a civil lawsuit, Employee and Employer agree to submit any disputes arising from Employee's employment or any breach of this Agreement, to binding arbitration subject to the JAMS Employment Arbitration Rules and Procedures. Prior to arbitration, the parties

---

[2] VCH was erroneously sued under its former name, Children's Hospital of Central California. *See* ECF No. 49 at 1. Thus, this order will refer solely to Defendant VCH.

2

agree to first attempt mediation." ECF No. 10 at 4. This Court denied VCH's motion to compel as premature, citing the parties' agreement to first attempt mediation before arbitration. *See id.*; ECF No. 36 at 2. The Court's denied VCH's motion without prejudice. *See* ECF No. 26.

The parties attended mediation on August 5, 2019. *See* ECF No. 46 at 2; ECF No. 47 at 3. In preparation for the mediation, VCH asserts it spent time analyzing the case, preparing a recommendation, and drafting a confidential mediation brief. *See* ECF No. 45-2 at 2; ECF No. 56 at 2; ECF No. 58 at 1. VCH contends it provided Ms. Peoples's counsel with its confidential mediation brief to help foster settlement. *See* ECF No. 56 at 2. VCH's head of Employee Relations, VCH's General Counsel, and VCH's outside counsel attended the mediation. *See* ECF No. 56 at 2; ECF No. 58 at 1. Needless to say, the mediation was unsuccessful. *See* ECF No. 45-2 at 2; ECF No. 47 at 3. Ms. Peoples primarily argues that the Court should deny the motion to compel arbitration because mediation was not "meaningful." ECF No. 47 at 3. Regardless of the productivity of the mediation, the Court finds that the parties attempted mediation pursuant to a valid arbitration agreement. Thus, the motion to compel arbitration is GRANTED.

## II. **LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), a "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). This Court's role is limited to determining: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted); *see also* 9 U.S.C. § 2.

"To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## III. DISCUSSION

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (2000). "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." *Id.* at 98 (citations and footnote omitted).

Ms. Peoples argues that: (1) the parties have not engaged in meaningful mediation, which Ms. Peoples contends is required under the Settlement Agreement; (2) VCH repeatedly failed to comply with the mediation/arbitration clause and thus cannot enforce it; (3) federal and state law does not support a motion to compel; and (4) this matter includes non-arbitrable claims. *See* ECF No. 47 at 1. Before turning to Ms. Peoples's arguments, the Court must first analyze whether the *Kilgore* factors are satisfied.

**A.  Arbitrability**

    **1.  *Armendariz* Analysis**

The Court must first determine whether there is a valid agreement to arbitrate. *Kilgore*, 718 F.3d at 1058. Ms. Peoples argues that the arbitration clause "fails to specify in clear and unmistakable language that Peoples' federal and state statutory discrimination claims are subject to arbitration." ECF

No. 47 at 8. The arbitration clause provides: "Employee and Employer agree to submit *any disputes* arising from Employee's employment or any breach of this Agreement, to binding arbitration . . . ." ECF No. 10 at 4 (emphasis added). In *Armendariz*, the California Supreme Court held mandatory employment arbitration agreements were enforceable so long as the arbitration permitted an employee to vindicate her statutory rights under FEHA and the arbitration met certain minimum requirements, including: (1) neutrality of the arbitrator; (2) the provision of adequate discovery; (3) a written decision; and (4) limitations on the costs of arbitration. 24 Cal. 4th at 90–91.

Here, the parties designated to resolve their post-mediation disputes according to JAMS Employment Arbitration Rules and Procedures. *See* ECF No. 10 at 4 ("JAMS Rules"). The JAMS Rules require that a neutral arbitrator conducts the arbitration. *See* JAMS Rule 7. Thus, the first *Armendariz* requirement is met. Next, the JAMS Rules specifically outline rules governing discovery in arbitrations. *See id.* at Rule 17 (requiring parties to cooperate in good faith for the exchange of non-privileged documents; provide names of potential witnesses and experts, along with their corresponding reports; and allowing for depositions). Therefore, the requirement for the provision of adequate discovery is satisfied.

Third, the JAMS Rules also require the arbitrator to render a Final Award, which consists of a written statement of the reasons for the Award. *See id.* at Rule 24. Thus, the third *Armendariz* factor is met. Lastly, the limitations on the costs of arbitration requirement is satisfied under the JAMS Rules, which states that where an arbitration is based on a clause or agreement that is required as an employment condition, as appears to be the case here where the Settlement Agreement was the precursor to reinstating Ms. Peoples's position (ECF No. 10 at 2–3), "the only fee that an employee may be required to pay is the initial JAMS Case Management Fee." *Id.* at Rule 31(c). Therefore, under *Armendariz*, there is a valid agreement to arbitrate.

//

//

### 2. Ms. Peoples's Arguments

#### a. Waivers of Judicial Forum

Ms. Peoples cites several cases to support the argument that any waiver of a judicial forum for civil rights claims must be explicit. *See* ECF No. 47 at 8. These cases merely require that any waivers of judicial forums must be explicit in *collective bargaining agreements*, which are not at issue in this case.

In *Nelson v. Cyprus Bagdad Copper Corporation*, the plaintiff signed an Employee Handbook which contained a hidden agreement to arbitrate Americans with Disabilities Act claims. *See Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997). Moreover, the *Nelson* plaintiff merely signed an agreement that he read and understood the Employee Handbook. *See id.* at 761. Here, however, the Settlement Agreement, which included the arbitration provision, specifically provides that "[a]ll parties have had the opportunity to consult with counsel of their choice relative to the entry into this Agreement and to have had the terms and conditions of same explained to them to the extent requested." ECF No. 10 at 5. Indeed, Ms. Peoples's counsel of record, Kevin G. Little, signed the Settlement Agreement "approved as to form and content." ECF No. 10 at 8. Thus, *Nelson* does not apply.

Ms. Peoples next cites *Wright v. Universal Maritime Servs. Corp.*, 525 U.S. 70, 72–75 (1998), where the Supreme Court held that an Americans with Disabilities Act ("ADA") claim was not arbitrable despite an arbitration clause in a collective bargaining agreement. The Supreme Court specified that "we think any *CBA* [*collective bargaining agreement*] requirement to arbitrate [the ADA claim] must be particularly clear." *Id.* at 79 (emphasis added). The Supreme Court also distinguished *Wright* from *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), reasoning "*Gilmer* involved an *individual's waiver of his own rights*, rather than a union's waiver of the rights of represented employees and hence the 'clear and unmistakable' standard was not applicable." *Wright*, 525 U.S. at 80–81 (emphasis added). Therefore, under *Wright*, the "clear and unmistakable" standard does not apply here where the arbitration clause is contained within Ms. Peoples's own Settlement

Agreement with VCH, not a collective bargaining agreement as in *Wright*. *See id.*

Ms. Peoples also cites *Bohnert v. Roman Catholic Archbishop of San Francisco*, 136 F. Supp. 3d 1094, 1117 (N.D. Cal. 2015), for the proposition that a waiver of Title VII must be clear and unmistakable. *Bohnert* likewise involved a collective bargaining agreement that "state[d] vaguely that a 'grievance' is deemed waived if the employee does not comply with the specific time limits," without mentioning "the right to bring suit in any formal adjudicative body." *Bohnert*, 136 F. Supp. 3d at 1118. The *Bohnert* court further explained that "[b]ecause it does not contain an arbitration clause, the policies furthered by the FAA are not implicated in this case." *Id.* Therefore, *Bohnert* is inapplicable because the instant matter does not involve a collective bargaining agreement. Further, the issue here involves the validity of an arbitration clause, whereas *Bohnert* did not concern an arbitration requirement. *See id.* at 1118.[3]

Lastly, Ms. Peoples cites *Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001), for the proposition that Title VII claims are arbitrable only where the arbitration clause specifically mentions Title VII claims. This Fourth Circuit case also involves collective bargaining agreements, which the *Wright* Court has held have more stringent requirements. *See Safrit*, 248 F.3d at 308; *Wright*, 525 U.S. at 79–81. Thus, the Court rejects Ms. Peoples's argument that the arbitration agreement must have explicitly included a waiver of a judicial forum for her civil rights claims to be arbitrable.

### b. **Waivers of Statutory Claims**

Plaintiff further argues that the arbitration provision in the Settlement Agreement are unenforceable and cannot be reformed so as to require arbitration. ECF No. 47 (citing *Ernst & Young LLP*, 834 F.3d 975, 979 (9th Cir. 2016)).[4] The Ninth Circuit has held that Title VII does not bar

---

[3] The Court need not consider Ms. Peoples's citation to *Rogers v. New York Univ.*, 220 F.3d 73, 76 (2d. Cir. 2000), which was abrogated by the Supreme Court in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (CBA provision "that clearly and unmistakably required union members to arbitrate ADEA claims was enforceable as matter of federal law; abrogating *Rogers v. New York Univ.*, 220 F.3d 73.").

[4] *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016), has been vacated by 894 F.3d 1093 (9th

7

compulsory arbitration agreements. *See Lambert v. Tesla, Inc.*, 923 F.3d 1246, 1250 (9th Cir. 2019) (citing *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 751–52 (9th Cir. 2003)). The Ninth Circuit is not alone: "[a]ll of the other circuits have concluded that Title VII does not bar compulsory arbitration agreements." *Luce, Forward*, 345 F.3d at 748–49 (enumerating holdings by every other circuit to this effect). Indeed, Congress "has subsequently rejected legislation" that would "preclud[e] waiver of a judicial form for Title VII claims." *Id.* at 753 n.9. In California, "nothing in the 1991 [Civil Rights] Act prohibits mandatory employment arbitration agreements that encompass state and federal antidiscrimination claims." *Armendariz*, 24 Cal. 4th at 96.

Once again, Ms. Peoples cites distinguishable cases. For example, in *Circuit City Stores, Inc. v. Adams*, the Ninth Circuit held that an arbitration agreement was unenforceable under California law where the provision required employees to arbitrate claims against an employer, but did not require the employer to arbitrate its claims against employees. 279 F.3d 889, 894 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002). Further, the arbitration provision in *Adams* limited remedies to injunctive relief, up to one year of backpay, and limited compensatory and punitive damages. *See id.* The agreement required employees to split arbitrator's fees with the employer and set a one-year statute of limitations. *See id.* Here, however, nothing in the parties' Settlement Agreement contains the limitations or strict fee allocation scheme as in *Adams*. *See generally* ECF No. 10. Thus, the Court finds *Adams* inapposite.

Additionally, Plaintiff cites *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 963 (2017), for the proposition that the "FAA does not require enforcement of a provision in an arbitration agreement that, in violation of generally applicable California contract law, 'limit[s] statutorily imposed remedies such as punitive damages and attorney fees.'" Nothing in the Settlement Agreement or the JAMS Rules demonstrates a limitation on remedies like punitive damages and attorney fees that may be afforded under a statutory claim like Ms. Peoples's Title VII or FEHA claims here. Thus, *McGill* is irrelevant. As

---

Cir. 2018).

8

Ms. Peoples correctly indicates, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985); *14 Penn Plaza LLC*, 556 U.S. at 265 ("federal antidiscrimination rights may not be prospectively waived, but [the court] confused an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right."). Nothing in the Settlement Agreement demonstrates that Ms. Peoples waived her substantive claims in the instant matter; she merely consented to arbitration. *See generally* ECF No. 10. Accordingly, the arbitration agreement is valid.

### c. **Meaningful Mediation**

Ms. Peoples contends that the parties have not engaged in meaningful mediation as required under the parties' Settlement Agreement. *See* ECF No. 47 at 1. The Settlement Agreement provides "[p]rior to arbitration, the parties agree to first attempt mediation." ECF No. 10 at 4. Nothing in the arbitration clause defines or requires "meaningful" mediation.

The parties attended mediation on August 5, 2019. *See* ECF No. 46 at 2; ECF No. 47 at 3. VCH spent time analyzing the case, preparing a recommendation, and drafting a confidential mediation brief in preparation for the mediation session. *See* ECF No. 45-2 at 2; ECF No. 56 at 2; ECF No. 58 at 1. VCH states it provided Ms. Peoples's counsel with its confidential mediation brief to help foster settlement. *See* ECF No. 56 at 2. VCH's head of Employee Relations, VCH's General Counsel, and VCH's outside counsel attended the mediation. *See* ECF No. 56 at 2; ECF No. 58 at 1. The mediation was unsuccessful. *See* ECF No. 45-2 at 2; ECF No. 47 at 3. Therefore, the parties completed what was required under the Settlement Agreement: they attempted mediation before initiating arbitration. Accordingly, the Court rejects Ms. Peoples's argument.

### d. **VCH Has Not Waived Right to Arbitration**

Ms. Peoples appears to argue that VCH waived its right to arbitration because it failed to engage in contractual pre-litigation mediation. *See* ECF No. 47 at 6–7. "A determination of whether 'the right to

9

compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.'" *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). To prove that VCH waived its right to arbitration, Ms. Peoples must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.*

Ms. Peoples has not established that VCH has waived its right to arbitration. VCH acknowledges it has a right to arbitration, which is consistent with VCH's two separate motions to compel. *See* ECF Nos. 13, 45. With respect to the second factor, "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims.'" *Yasuda*, 829 F.3d at 1125 (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). This element is met if a party actively litigates its case to take advantage of being in federal court. *Id.* Here, Ms. Peoples filed her lawsuit in February 2019, and the parties have since engaged in mediation and settlement discussions. The parties have not, however, actively litigated the case in federal court, and the Court has not made any decisions on the merits. On the third factor, Ms. Peoples fails to provide any facts or argument to establish that she has been prejudiced. In light of the strong federal policy favoring enforcement of arbitration agreements, the Court holds there is a valid agreement to arbitrate.

**B.      Scope of the Agreement**

The Court next must determine whether the Settlement Agreement encompasses the dispute at issue. *Kilgore*, 718 F.3d at 1058. The FAA requires courts to "examine a complaint with care to assess whether any individual claim must be arbitrated." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19, 22 (2011) (per curiam).

The term "any disputes" has been interpreted to encompass Title VII and other statutory claims and FEHA claims. *See, e.g.*, *Mikhak v. Univ. of Phoenix*, No. C16-00901 CRB, 2016 WL 3401763, *1,

*5 (N.D. Cal. June 21, 2016) (granting motion to compel arbitration of Title VII, FEHA, and California Government Code § 12940 claims where plaintiff signed faculty handbook stating arbitration agreement "applie[d] to any covered dispute arising out of or related to the faculty member's employment with and interactions with the University"); *see also Gilmer*, 500 U.S. at 20 (holding "any disputes" in arbitration clause encompassed Age Discrimination in Employment Act claims).

Here, the Settlement Agreement states that "Employee and Employer agree to submit *any disputes* arising from Employee's employment or any breach of this Agreement, to binding arbitration . . . ." ECF No. 10 at 4 (emphasis added). Consistent with *Mikhak* and *Gilmer*, the term "any disputes" is sufficiently broad to encompass Ms. Peoples's claims under Title VII, FEHA, wrongful termination, and breach of the covenant of good faith and fair dealing. Accordingly, Ms. Peoples's claims are subject to arbitration.

**C.      Non-Arbitrable Claims**

Ms. Peoples requests the Court declare the entire action non-arbitrable because of Mr. Peoples's single loss of consortium claim. The parties agree that Mr. Peoples did not sign the Settlement Agreement containing the arbitration clause. *See* ECF No. 46 at 12; ECF No. 47 at 9. VCH does not seek to arbitrate Mr. Peoples's loss of consortium claim. *See* ECF No. 46 at 12. However, VCH requests that the Court either stay Mr. Peoples's claim or decline to exercise supplemental jurisdiction over his state law claim and dismiss. *See* ECF No. 46 at 12–13.

Thus, the issue is whether Mr. Peoples's single loss of consortium claim should be stayed pending completion of arbitration of Ms. Peoples' claim or dismissed. In California, a claim for loss of consortium is an independent claim. *Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274, 1279–80 (2012).

Ms. Peoples cites *Williams v. Atria Las Posas*, where the California Court of Appeal affirmed the denial of a motion to compel arbitration based on potential availability of the third-party litigation exception codified under California Code of Civil Procedure § 1281.2(c). *See* ECF No. 47 at 9 (citing

11

*Williams v. Atria Las Posas*, 24 Cal. App. 5th 1048, 1057–58 (2018)). The appellate court held that the trial court erred by not analyzing the three factors to determine whether the third-party litigation exception applies. *See id.* at 1055. The exception applies when the following conditions are satisfied: (1) a party to the arbitration agreement is also a party to a pending court action with a third party; (2) the third-party action arises out of the same transaction or series of transactions; and (3) there is a possibility of conflicting rulings on a common issue of law or fact. *See id.* at 1054.

> If all three conditions are satisfied, then section 1281.2(c) grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute. Specifically, section 1281(c) identifies four options from which the court may choose: (1) refuse to enforce the arbitration agreement and . . . . order intervention or joinder of all parties in a single action or special proceeding; (2) order intervention or joinder as to all or only certain issues; (3) order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; and (4) stay arbitration pending the outcome of the court action or special proceeding.

*Acquire II, Ltd. v. Colton Real Estate Grp.*, 213 Cal. App. 4th 959, 968 (2013) (internal citations and quotation marks omitted).

Here, all three *Williams* conditions are met. First, the parties to the arbitration agreement—Ms. Peoples and VCH—are also parties to the instant matter including Mr. Peoples. Second, Mr. Peoples's loss of consortium claim arises out of the same transaction or series of transactions as Ms. Peoples's claims subject to arbitration. *See* FAC ¶¶ 51–54. Third, if Mr. Peoples's loss of consortium claim is allowed to separately proceed in state court, for example, there is a possibility that the state court will reach conflicting rulings from the JAMS neutral. Because the Court finds that all three *Williams* factors are met, the next inquiry is whether to stay or dismiss Mr. Peoples's claim.

The Court finds the most prudent option in this matter is to "order arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the arbitration proceeding." *Acquire II, Ltd.*, 213 Cal. App. 4th at 968. Given that Ms. Peoples's claims predominate the FAC, and because Ms. Peoples agreed to arbitrate her claims under the Settlement Agreement, the Court will compel arbitration and stay the matter. While Mr. Peoples's loss of

consortium claim is an independent one, the Court deems the most efficient use of its resources mandates a stay of Mr. Peoples's claim pending resolution of the arbitration to avoid inconsistent rulings on a common issue of law or fact.

**D.      Request to Stay and to Dismiss Claims**

After determining that a case before the Court is predicated upon issues referable to arbitration under a written arbitration agreement, the Court shall, in response to the request of a party, stay the action pending the completion of arbitration. 9 U.S.C. § 3; *Ziober v. BLB Resources, Inc.*, 839 F.3d 814, 817 (9th Cir. 2016). Therefore, the Court stays both Ms. Peoples's and Mr. Peoples's claims.

## IV. CONCLUSION

For the foregoing reasons, VCH's motion to compel arbitration and stay the proceedings is GRANTED. The case is STAYED during the pendency of the arbitration proceedings. The parties shall file a joint report every sixty days as to the status of the arbitration process, or fourteen days from the entry of a Final Award[5] in the arbitration proceedings, whichever is sooner.

IT IS SO ORDERED.

Dated:     **January 28, 2020**               /s/ Lawrence J. O'Neill
                                                            UNITED STATES DISTRICT JUDGE

---

[5] "Final Award" means the final decision of the Arbitrator that is rendered within thirty calendar days after the close of the Hearing. *See* JAMS Rule 24, *available at* https://www.jamsadr.com/rules-employment-arbitration/english#twenty-four.